UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

WIL'S INDUSTRIAL SERVICES, INC.  )
                                 )
        Plaintiff                )
                                 )
     v.                          )   Case No. 2:07 cv 128
                                 )
UNITED STATES STEEL CORPORATION  )
                                 )
        Defendant                )

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 26] filed by the defendant, United States Steel Corporation, on January 20, 2009. For the following reasons, the motion is **GRANTED.**

Background

The background facts of this case are taken from the Complaint and the accurately cited portions of the summary judgment briefs.[1] The plaintiff, Wil's Industrial Cleaning Services, Inc., is wholly owned by an African American, Alexander Wilderness, Sr. Wil's was formed by Wilderness to provide industrial cleaning services and janitorial work at United States Steel.

---

[1] The Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment filed by the plaintiff is replete with statements that either lack citation to any source (*see* Undisputed Material Facts, ¶¶ 1-5, 7, 11, 14; Statement of Genuine Issues, ¶¶ 1, 7-10), cite deposition pages that are not included in the docketed exhibits (*see* Undisputed Material Facts, ¶¶ 6, 8; Statement of Genuine Issues ¶¶ 3, 6), or cite to deposition pages that do not support the statement cited (*see* Undisputed Material Facts, ¶¶ 6, 10, 12-13, 15-17; Statement of Genuine Issues, ¶¶ 2, 5-6). At this point in the proceedings, with discovery complete, the plaintiff's broad yet unsupported accusations appear to be hyperbole, making it difficult to construct a factual background in the light most favorable to the non-moving party.

From 1994 through September 14, 2005, Wil's worked exclusively at USS, charging USS $19.00 per man hour for the labor provided. In January 2004, Wil's joined Laborers International Union of North America, Local 81 after the union protested the performance of work under its jurisdiction at USS. On September 11, 2005, three of Wil's workers failed to wear the required gas monitors, and three other Wil's workers failed to comply with the required lock out procedures at the blast furnace. Because of these violations of USS's safety protocol, Wil's was suspended from work at the steel mill.

The Complaint filed by Wil's alleges one count, that USS deprived Wil's "of the right to make, modify, perform and enforce contracts" in violation of 42 U.S.C. §1981, praying for $6,000,000.00 in compensatory and $20,000,000.00 in punitive damages. (Pltf. Comp. p. 4) The particulars listed in Count I include the assertion that Wil's was precluded from entering into any written contract or Blanket Agreement with USS, was forced to join Local 81 by a USS employee, was paid deflated labor rates, and was terminated "as a result of the breach of contract" and discrimination. (Pltf. Comp. pp. 2-4)

USS has submitted as an exhibit a purchase order with Wil's which contains the General Conditions Covering Work on Purchaser's Premises of the standard Blanket Purchase Order, dated August 2002. (DE 29-5, pp. 26-63) This Blanket Purchase Order was in effect through June 1, 2007, but makes no guarantees as to the quantity of work given to the vendor. Rather, it sets out

the terms and conditions of any work ordered through purchase orders under the blanket agreement. Although Wil's has submitted pay charts dated 2005 for several vendors, Wil's provided basic manual cleaning and janitorial services, and other vendors performed other types of cleaning services which often included the use of heavy machinery, such as a vacuum truck, for cleaning. There is no information submitted which describes and compares the exact services performed by the various vendors and Wil's.

Wil's argues that race discrimination was the root of Wil's treatment by USS, supporting this with the testimony of Vernitha Woodfaulk, a safety coordinator at Wil's. Woodfaulk's contention of a racially-motivated bias against Wil's stems solely from a comment made by Jim McGhan, a Maintenance Shift Manager for USS, when she inquired about him criticizing Wil's. McGhan allegedly replied, "Wil's make [sic] too much money." (Dep. of Vernitha Woodfaulk, pp 27-28) Woodfaulk now states that she "kn[e]w what's going on," and "understand[s] 'cause I can pick up intuition[.]'" (Woodfaulk Dep. pp. 38, 48)

USS filed its Motion for Summary Judgment on January 20, 2009. In its Response, Wil's lists 17 Undisputed Material Facts, several of which cite deposition pages not included in the exhibits or which do not accurately reflect what was said in the deposition. Undisputed Material Fact 6 states, "During the period of 1994 through September 14, 2005 Wil's did not have any employee injuries or reportable safety violations." However, the exhibit pages cited either say nothing about injuries or safety

violations or simply were not included in the exhibit. Undisputed Material Fact 8 states, "During the period of 1994 through September 14, 2005 Wil's was never allowed to submit a bid for work at USS." However, the deposition page cited is not included in the submitted exhibit. Undisputed Material Fact 10 states, "Pursuant to the orders of Joe Danick and other USS Officials during the period of 1994 through September 14, 2005 Wil's secured work by seeking out foreman [sic] or supervisors to ask for work at USS." Again, the deposition page cited is not included in the exhibit. Undisputed Material Fact 13 states that McGhan "fired Wil's Company and told them to leave the Mill." However the deposition of McGhan cited includes no statement to support this. Undisputed Material Fact 17 states that "Wil's was the only African American owned industrial cleaning company working for USS" from 1994 through September 14, 2005. However, the statement in the deposition cited only supports this status in 2002.

Wil's also lists ten genuine issues which it argues preclude summary judgment. Of the ten, five are not supported by any citation, two cite deposition pages not included as exhibits, two others are distortions of the evidence provided, and one cites deposition testimony which simply does not support the issue contended. The following Genuine Issues contain no citations:

> 1. Wil's never signed a Blanket Purchase Order at anytime that Wil's provided services to USS. (Exhibit   ).

\* \* \*

4

> 7. Wil's had worked in the Mill with no complaints about its work.
>
> 8. USS Employees unreasonably delayed approving Wil's Safety Plan.
>
> 9. Wil's was fired as of September, 2005 by Jim MCghan [sic]; he had made it known that Wil's was making too much money.
>
> 10. Wil's suffered financial disadvantage the entire time it provided services to USS.
>
> (Pltf. Resp. pp. 3-4)

The following Genuine Issues cite sources not provided:

> 3. Wil's was forced to join Union Local 81 in early 2004 by Kenneth Simmons. (Exhibit 1, Dep. Alexander Wilderness, Sr., pgs. 169-171 ).
>
> * * *
>
> 6. Wil's employees did not violate any safety regulations while working in the Blast furnace area on September 11, 2005. (Exhibit 2, Dep. A. Wilderness, Jr., pgs. 43-55).
>
> (Pltf. Resp. pp 3-4)

As to Issue 6, only pages 43-47 were included in the exhibits submitted, and nothing in those pages provided supports this statement.

Genuine Issue 4 states that "USS officials led a tour for Local 81 to determine whether Wil's workers were doing jobs claimed by Union Local 81. USS agreed that Wil's workers were doing Local 81 work." It is unclear how this is an issue that in any way supports a charge of discrimination. Likewise, Genuine Issue 5 states, "During 1994 through September 14, 2005 Wil's was not allowed to and never earned the rates other industrial clean-

5

ing Companies charged USS." Wil's cites a series of pay rate charts from 2005. This exhibit does not support the allegation over the 11 year time frame, nor can the court conclude from the different rates in different columns, some higher for Wil's, others lower, whether Wil's was earning lower rates overall. In addition, the court has no support for the conclusion that the charts included encompass pay rates for *all other industrial cleaning companies*, or for that matter, whether the different companies included did comparable work.

Genuine Issue 2 states, "During 1994 through 2007 USS entered into and signed Blanket Agreements with all other Industrial Cleaning Companies except Wil's." (citing Ex. 7, Dep. Kenneth Simmons, pgs. 38-45). However, nowhere in the cited deposition pages did Simmons make that statement. Simmons' testimony on those pages is almost entirely about rates of pay. Because this is a key issue in the case, the court thoroughly searched the exhibits provided in an effort to find testimony related to this issue. The *only* testimony concerning this assertion reads:

> Q. [Mr. Lyles, counsel to Wil's]: Okay. Now, did anybody at the mill . . . ever tell you that the mill routinely entered into five-year blanket agreements with industrial contractors?
>
> A. [Alexander Wilderness, Sr.]: No. Never.
>
> Q. [Lyles]: When did you first learn that, Mr. Wilderness?

6

> A. *I learned it from you that they have that.*

(Wilderness, Sr. Dep. p. 218)

The plaintiff must provide admissible evidence to support this allegation and may not rely on the unsupported claims of its attorney.

Likewise, in its legal analysis, Wil's explains the direct method of proof, but at no time applies the facts to that method. Because Wil's spent more time discussing the indirect method, it must be assumed that this is its stronger argument. Also, Wil's declaration that the safety violations that USS contends support Wil's suspension "can clearly be considered as pretext," reinforces the assumption that the indirect method's application is appropriate. (Pltf. Resp. p. 11) Though the collection of unfounded allegations and assumptions lacks reliable bases, the premise of Wil's Complaint and the information available from the exhibits Wil's has submitted will be applied in the light most favorable to the plaintiff.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); ***Williams v. Excel Foundry & Machine, Inc.***, 489 F.3d 309, 310 (7th Cir. 2007); ***Treadwell v. Office of the Illinois Secre-***

*tary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).  A fact is material if it is outcome determinative under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990) (stating same).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

See also *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Branham*, 392 F.3d at 901 (stating same); *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens [and this right includes] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §1981(a)-(b), as amended by the Civil Rights Act of 1991. To establish a Section 1981 claim, a plaintiff must show that he is a member of a racial minority, the defendant intentionally discriminated against him based on race, and the discrimination related to the making or enforcing of a contract. ***Krupa, Inc. v. Leonardi Enterprises***, 2007 WL 178305, *2 (N.D. Ill. Jan 17, 2007)(*citing* ***Morris v. Office Max, Inc.***, 89 F.3d 411, 413 (7th Cir. 2007)). *See generally* ***Ricci v. DeStefano***, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___ (2009) (discussing the "important purpose" that "the workplace be an environment free of discrimination where race is not a barrier to opportunity.").

In a Section 1981 case, a plaintiff can prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in ***McDonnell Douglas Corporation v. Green***, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in ***Texas Department of Community Affairs v. Burdine***, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981); ***Williams v. Waste Management of Illinois***, 361 F.3d 1021, 1034 (7th Cir. 2004); ***Dandy v. United Parcel Service, Inc.***, 388 F.3d

263, 272 (7th Cir. 2004). Under the direct method, the plaintiff "must show either 'an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination.'" *See* ***Dandy***, 388 F.3d at 272 (*quoting* ***Gorence v. Eagle Food Centers***, 242 F.3d 759, 762 (7th Cir. 2001)); ***Rhodes v. Illinois Department of Transportation***, 359 F.3d 498, 504 (7th Cir. 2004); ***Adams v. Wal-Mart Stores, Inc.***, 324 F.3d 935, 938-39 (7th Cir. 2003). Circumstantial evidence must create a "convincing mosaic" that "allows the jury to infer intentional discrimination by the decision maker" and points directly to a discriminatory reason for the employment decision. ***Rhodes***, 359 F.3d at 504 (*quoting* ***Troupe v. May Department Stores Company***, 20 F.3d 734, 737 (7th Cir. 1994)); ***Adams***, 324 F.3d at 939.

For the indirect method of proof, the plaintiff has the initial burden of showing that 1) he belongs to a protected group; 2) he was performing to the employer's legitimate expectations; 3) he suffered an adverse employment decision; and 4) the employer treated similarly situated employees who are not in the protected group more favorably. ***Davis v. Con-Way Transportation Central Express, Inc.***, 368 F.3d 776, 788 (7th Cir. 2004); ***Wells v. Unisource Worldwide, Inc.***, 289 F.3d 1001, 1006 (7th Cir. 2002). This framework is flexible and may be adapted to fit each case. ***Burdine***, 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; ***Wohl v. Spectrum Mfg., Inc.***, 94 F.3d 359 (7th Cir. 1996).

11

Once the plaintiff has met this initial burden, the burden shifts to the defendant who must "articulate a legitimate, nondiscriminatory reason for its actions." *Herron v. Daimler-Chrysler Corporation*, 388 F.3d 293, 299 (7th Cir. 2004); *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 897 (7th Cir. 2003). The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 130, 142, 120 S.Ct. 2099, 2106, 147 L.Ed.2d 105 (2000).

The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the reason given by the defendant is just a pretext for discrimination. See *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005); *Volvosek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 692 (7th Cir. 2003); *Peters v. Renaissance Hotel Operating Company*, 307 F.3d 535, 545 (7th Cir. 2002). The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." *Crim v. Board of Education of Cairo School District No. 1*, 147 F.3d 535, 541 (7th Cir. 1998); *Rummery v. Illinois Bell Telephone Company*, 250 F.3d 553, 557 (7th Cir. 2001). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. *Lesch v. Crown Cork & Seal Company*, 282 F.3d 467, 473 (7th Cir. 2002); *Schuster*, 327 F.3d at 574-576. The trier of fact still

12

may consider the evidence establishing a plaintiff's prima facie case "and inferences properly drawn therefrom on the issue of whether a defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143, 120 S.Ct. at 2106 (*citing* and *quoting* *Burdine*, 450 U.S. at 255 n.10, 101 S.Ct. at 1089).

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Center*, 509 U.S. at 507, 113 S.Ct. at 2747; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Johnson*, 325 F.3d at 897. A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion. In *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both *McDonnell Douglas* and [*St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 113 S. Ct. at 2747] speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.
>
> *Anderson*, 13 F.3d at 1124 (*quoting* *Shager v. Upjohn*, 913 F.2d 398, 401 (7th Cir. 1994))

See also *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002); *Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673, 683 (7th Cir. 2001) (stating that evidence that calls into question the truthfulness of the employer precludes summary judgment). If the plaintiff is unable to meet his burden, his claims must fail.

No reliable evidence has been submitted which includes any acknowledgment or a discriminatory intent by USS to support a finding under the direct method of proof. Likewise, Wil's has not provided reliable circumstantial evidence which could provide even the thinnest thread of an inference of discriminatory intent. After sifting through Wil's Response and the exhibits submitted to support the alleged facts and disputes, the only testimony cited which asserts discriminatory intent is pure supposition by Woodfaulk. Her intuition, without any racial epitaphs, anecdotes of disparate treatment, or derogatory statements of any kind relating to race, is not enough to provide even the barest circumstantial evidence of discriminatory intent and cannot be inferred to point directly to a discriminatory reason for an employment decision.

Under the indirect method, the analysis begins with whether Wil's is a member of a protected class. Wil's, as a minority-owned corporation, satisfies this first element of the prima facie case for discrimination under Section 1981. *See Krupa*, 2007 WL 178305 at *3 (holding that the corporation had the contractual relationship and was the proper plaintiff for the Section 1981 claim)(discussing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006)).

Next, Wil's must show that it was performing at the legitimate expectations of USS. However, Wil's fails to do so. The safety violations of six of Wil's workers on September 11, 2005, which precipitated the suspension of work are verified throughout

the exhibits provided by both parties.  The undisputed fact that Wil's breached USS's safety protocol defeats this element of the prima facie case and requires the grant summary judgment for USS. However, the remaining elements and burden shifting will be discussed.

Third, Wil's must show that it suffered an adverse contractual action.  However, USS has submitted its Blanket Agreement with Wil's, and Wil's has not mentioned the existence of this document.  Wil's has not presented evidence which establishes that it was paid less for the same work, nor has it demonstrated that the suspension for the safety violations was unwarranted or a violation of a contractual agreement.  Therefore, Wil's fails to meet its burden on this element also.

Fourth, Wil's must show that USS treated similarly situated vendors not from the suspect class more favorably than it treated Wil's.  Once again, Wil's fails to meet its burden of proof. Wil's was given a Blanket Agreement from 2002-2007.  Wil's has failed to demonstrate that its pay scale was discriminatory, nor has it shown that others who commit serious safety violations were not suspended.  Wil's' response includes only baseless accusations of better treatment given by USS to other vendors, but none of these accusations are supported by evidence submitted.

Assuming, for the sake of argument, that Wil's met the burden of proving its prima facie case, the burden would shift to USS to give a legitimate nondiscriminatory reason for any adverse

15

action against Wil's. Because the only adverse action plausibly argued with the facts provided is the suspension of work, USS counters that the failure to follow required safety protocol was the legitimate, nondiscriminatory reason for Wil's suspension. The final burden then shifts back to Wil's to show that the safety violations are pretext or that there is no basis in fact for USS's contention that safety concerns were the premise for the suspension. However, the depositions from Wil's staff members confirm the details of the safety violations. Wil's rests on allegations that other vendors have not been suspended in similar situations, but it has failed to produce evidence to support this argument. Due to this failure to produce evidence supporting safety concerns as a pretext for discriminatory intent, Wil's claim under the indirect method fails. Wil's has provided no evidence which calls the truthfulness of USS into question, and therefore summary judgment must be granted.

To summarize, all four contentions in Count I of Wil's Complaint fail to survive the **McDonnell Douglas** proof scheme. The contention that Wil's was unfairly denied the opportunity to enter a Blanket Agreement is disproved by the existence of such an agreement from 2002-2007. The contention that Wil's was forced by USS to join Local 81 is baseless and inadequately substantiated. The contention that Wil's was paid lower rates is not supported by evidence showing that it did equal work for lesser pay. Finally, the contention that USS breached its contract with Wil's by termination for discriminatory reasons is not

demonstrated by a prima facie case. Even if the elements of the prima facie case were met, USS satisfies the burden to demonstrate a legitimate nondiscriminatory reason for suspending Wil's from providing services because of the safety violations of six employees of Wil's on September 11, 2005. The burden on Wil's to demonstrate that this rationale is pretextual is not met by any of the evidence provided by Wil's. Therefore, the Motion for Summary Judgment is **GRANTED**.

One additional matter bears discussion: the difficulty involved with discerning "facts" from the pleading, brief, and submission of evidence by Wil's. Federal Rule of Civil Procedure 11(b) states:

> By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discover; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

In addition, Rule 11(c)(3) provides "On its own, the court may order an attorney, law firm, or party to show cause why conduct

specifically described in the order has not violated Rule 11(b)."
Such is the case here, and the court has expended unnecessary
time and energy both in rummaging through the exhibits to locate
mis-cited facts or non-existent facts in an attempt to piece
together a fairly accurate representation of the plaintiff's
claims.  As described at length, plaintiff's counsel presented a
plethora of broad, unfounded accusations and baseless "facts" to
the court.  Much of the deposition testimony was distorted or
simply fabricated.  Further, counsel needlessly made the legal
contentions inflammatory where there was no basis in fact:  The
only references made to a racial epithets were made by plain-
tiff's counsel.[2]  Although no sanctions will be awarded at this
time, counsel is **WARNED** that future pleadings should be more
carefully written.

---

For the foregoing reasons, the Motion for Summary Judgment
[DE 26] filed by the defendant, United States Steel Corporation,
on January 20, 2009, is **GRANTED**.

ENTERED this 17th day of July, 2009

            s/ ANDREW P. RODOVICH
            United States Magistrate Judge

---

[2]"His response although not using the word 'Nigger', clearly conveyed that he felt that a Black company should not be working at USS or making so much money."  (Pltf. Resp. p. 8)  That word is never mentioned in the deposition cited.  Neither does the "response" discussed in any way "clearly convey" such a racist mind-set.  The addition of an inflammatory reference to the pleadings served no good purpose.